UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA

-vs-

DAVID E. BURKE,
Defendant.

Case No. 1:14-cr-397

DETENTION HEARING

January 21, 2015

Before: Theresa C. Buchanan, Mag. Judge

APPEARANCES:

Alexander T.H. Nguyen, Counsel for the United States

Marc A. Agnifilo and Lisa Manning, Counsel for the Defendant

The Defendant, David E. Burke, in person

NOTE: The case is called to be heard at 2:02 p.m. as follows:

THE CLERK: The United States versus David Burke, case 14-cr-397.

MR. NGUYEN: Good afternoon, Your Honor. Alex Nguyen for the United States.

THE COURT: Good morning.

MS. MANNING: Good afternoon, Your Honor. Lisa Manning for Mr. Burke. And with me is Marc Agnifilo, he has been admitted pro hac vice on this case for Mr. Burke.

THE COURT: Thank you. All right. This is the defendant's initial appearance. He has been charged with conspiracy under 18 U.S.C. section 371; importation contrary to law, ten counts of that, 11 counts of that, in violation of 18 U.S. Code section 545; 11 counts of introducing misbranded drugs and devices in interstate commerce, in violation of 21 U.S. Code section 331(a); unlicensed wholesale distribution of drugs, in violation of 21 U.S.C. section 331(t); and conspiracy to commit money laundering, in violation of 18 U.S.C. section 1956(h).

Counsel, what is the possible penalty for this offense?

MR. NGUYEN: Your Honor, the maximum possible penalty is 196 years imprisonment, $2.82 million fine, three years of supervised release, and a $1,700 special assessment.

THE COURT: And you're seeking detention?

MR. NGUYEN: That's correct, Your Honor.

THE COURT: Would you like to have the detention hearing tomorrow afternoon or Friday afternoon?

MR. AGNIFILO: Is it possible to have it now, Your Honor?

THE COURT: Is the Government ready?

MR. NGUYEN: Yes, Your Honor.

THE COURT: Okay. I have got the Pretrial report.

MR. NGUYEN: Your Honor, with the help of the Court Security Officer, I'm just handing you up two exhibits.

Essentially, the nature of the offense, the strength of the evidence here warrants pretrial detention because the defendant is a serious flight risk.

Based on the nature of the offense, it's based -- the crime in this case is based almost entirely on deceit and fraud. For years the defendant was a key manager of the TC Medical Group, supervised the sales force, and coordinated the smuggling and sale of over $18 million of misbranded prescription drugs. False Customs forms were used. False representations to the U.S. customers were made.

And the defendant, as you can see from Government's Exhibit 1, him and almost everybody else in the organization used false names to sell the drugs.

The weight of the evidence in this case is

overwhelming. E-mails from 30 or so accounts show clear knowledge of smuggling of misbranded drugs through fraud and deceit, the defendant's supervisory role, knowledge of the illegality.

And so, as you can see from Government's Exhibit 2, the various drugs recovered in the search warrant. And the defendant also confessed.

There are no significant ties, family, financial, or employment ties here in the United States at all, other than a sister in New York. The defendant is also a Canadian citizen with strong ties abroad. His parents and four siblings live abroad. And his father, who is here in the States, is also a drop shipper.

And so, we ask the defendant be detained.

THE COURT: His father is also a what?

MR. NGUYEN: His father, who is in the United States, Your Honor, was also involved in the scheme.

THE COURT: I see. Okay. Do you have argument?

MR. AGNIFILO: Thank you, Your Honor. Thank you for having me in your court.

This is the defendant's first bail application. When he was arrested in the Southern District of Florida, he essentially waived. And he was arrested, I believe it was December 23. So he has been incarcerated for about a month.

This is not -- significantly, this is not a case that

involves controlled substances or narcotic drugs. It involves medical products and devices, things like orthopedic injections, cosmetic devices, things like that.

So while the statutory maximum sentence, if they are all run together, obviously adds up to quite a formidable number, the defendant is not looking at that type of jail time under a Guidelines calculation with these offenses.

I would point out, and I think it is very significant, that the only other three co-defendants who have appeared before this Court have all been released on bonds without conditions.

THE COURT: Well, I don't know what their situation is.

MR. AGNIFILO: No, but I can provide some background. This defendant is not alleged to be a principal of SB Medical, Inc. And I say that because it's very clear from paragraphs 10 and 11 of the indictment that there is only one individual alleged to be a principal, and that's the individual Tzvi Lexier or Lexier. He is the principal of this organization. My client is not.

My client, just like the other three defendants who have been released without conditions, basically worked allegedly on commission. That's what he did. He wasn't a part of this SB Medical, Inc. SB Medical, Inc. is sort of the heart and soul of what's alleged --

THE COURT: Well, it says here that he oversaw the day-to-day operations. You mean he wasn't an owner, is that what you're trying to tell me?

MR. AGNIFILO: He was not an owner. He wasn't a principal. He worked -- he basically got commissions. That's what the indictment alleges.

And the indictment alleges that he worked, and he did the same thing that dozens of other people did, some of whom are co-defendants in this indictment, and that he was given a commission. He essentially received a paycheck from Mr. Lexier, who was the principal of SB Medical Group.

The other entity, although it's listed in the indictment, does not appear to play much of a role in the indictment. And I say that because all of the financial information in the indictment are bank accounts controlled by SB Medical, Inc., money coming through SB Medical, Inc. And my client had no ownership interest, partnership interest, interest whatsoever in that business entity, just like the other three defendants.

My client was born in the United States. He was born in Buffalo, New York, in 1980. He is a U.S. citizen. He has brothers and sisters, some of whom live in Canada. One of whom, Rachel Tuchman, lives in Woodmere, New York, which is in Nassau County, just east of New York City.

I don't believe, Your Honor, that this is an

appropriate case for detention. There is no allegations -- there is no crime of violence. There is no drug dealing in the traditional sense that is called for as a rebuttable presumption. There is no rebuttal presumption in this case.

This is a case that cries out either for an unsecured bond, as was the case with the other defendants, or at most a secured bond.

If Your Honor is leaning toward the possibility of a secured bond, I have a package that I had run by the Government yesterday. I e-mailed them and sent them some documents. And the proposed package is this, and I believe it's a reasonable one: A $100,000 secured bond that is secured by the equity in the home at 705 Peninsula Boulevard in Woodmere, New York.

I've provided the Government with the title and appraisal of that property, and recent mortgage statements. And the available equity in that property, which is owned by the defendant's sister, Rachel Tuchman, is about $200,000. He would live there. So he would live with his sister just outside New York. She would put up her house in Woodmere, New York. She would be a co-signer to the bond.

The Government already has his United States passport and his Canadian passport. So the Court could order that he not go out and get new travel documents, which of course he will not do. His travel could be restricted to the Eastern District of Virginia, the Eastern District of New York where

Woodmere, New York, is located, and the Southern District of New York, which is where my office is located. And if he takes the train, he would have to travel between those places.

And I think that's -- those are reasonable conditions given this case. Again, the defendant is not all that differently situated than the other defendants. And I think this is the kind of case that's not a detention case, it's not appropriate for detention.

Again, when we see detention, we tend to see demonstrated risk of flight. This young man has hired an attorney, he has hired me, he has hired local counsel here in Virginia, he is obviously intent and committed, financially committed to defending this case. He is going to defend this case.

We have an arraignment before Judge Trenga on January 30 at 9 a.m. He'll be here, I'll be here. And there is no reason to keep him in prison pending the outcome of this case. He is a U.S. citizen. And the fact that he has lived in Canada for a good part of his life does by itself make him a risk of flight. He does not have any --

THE COURT: I don't see here that he is a U.S. citizen. It says that he was admitted -- he was legally admitted as a non-immigrant.

MR. AGNIFILO: That's not true. He was born in Buffalo, New York.

MR. NGUYEN: He has an American passport, Your Honor.

THE COURT: I see. Okay. But this says he was born in Toronto, Canada.

MR. AGNIFILO: No, he moved to Toronto, Canada, when he was in grade school. But, no, he was born in Buffalo, New York.

THE COURT: All right.

MR. AGNIFILO: And so, he is a U.S. citizen. He is going to come back. He is going to defend these charges. And I ask that he be released on a bond with those conditions.

Thank you, Your Honor.

THE COURT: Do you have something to add?

MR. NGUYEN: Yes, Your Honor.

Your Honor, on the three other defendants in this case who are out on bond, they live in the United States. Their role was significantly less. They were sales representatives and warehouse --

The defendant, by contrast, made commissions of over a million dollars. And he has strong, strong ties, not to some other country halfway around the world where it would be hard to get to, he has strong ties to Canada. He has lived there for 26 years. The majority of his family are in Canada. He has significant assets there. And at this stage he represents a significant flight risk.

MR. AGNIFILO: May I just add one thing, Your Honor?

THE COURT: Okay.

MR. AGNIFILO: Thank you. The defendant comes from, and I think this plays a role, comes from a very solid family. His father, while it's alleged that he played some role in this, he hasn't been arrested, and I don't believe there is significant evidence of his knowing involvement in this matter. He was a university professor his entire life. He is 72 years old now. He lives in Boynton Beach, Florida. He is an outstanding member of the community his entire life.

The defendant's mother has been involved in --

THE COURT: Well now, the report says his parents reside in Toronto.

MR. AGNIFILO: No, his father lives -- his father has a -- the mother lives in Toronto full time.

THE COURT: Okay.

MR. AGNIFILO: Living in Toronto, if one can get to Boynton Beach, Florida, in January, I think --

THE COURT: So he spends the winter in Florida, but he resides in Toronto?

MR. AGNIFILO: I think he spends more than the winter. I think it's more of a -- he spends a great deal of time in Boynton Beach, Florida.

And, Your Honor, we're talking about Canada. We're not talking about -- I don't believe that the Canadians would house this young man, especially when he is a U.S. citizen -- I

mean, the fact is, he is a U.S. citizen. And I don't believe he is a flight risk, given the facts here, given what he is looking at.

I mean, if one does a survey of jail terms in cases like this nationwide, they often result in a year, two-year, or less sentences. We're not talking about a major narcotics case where he's looking at ten years, 15 years. It's just not that kind of case.

And I think something that the prosecutor said is noteworthy. He said that the scheme overall is $17 million or more, and that the defendant made about a million dollars. That leaves $16 million. Which is my point, is that the other defendants are -- he is not so different in kind than the other defendants, and the defendants who were released on unsecured bonds.

I think if there's a difference, the difference should be that whereas the other three get an unsecured bond, he should get a secured bond. But he shouldn't be detained on these facts. I just don't believe there is anything in the record that suggests that this is a detention case rather than a case with a secured bond.

Thank you, Your Honor.

THE COURT: And what about Lexier, was he released? Or has he been arrested and come into the United States yet?

MR. NGUYEN: He is currently in Canada, Your Honor.

THE COURT: Okay. You know, I have read the allegations in the indictment. And, frankly, the defendant's involvement here is not minimal, as you would suggest. It's very extensive. It is over a long period of time.

He clearly, from the conversations that were recorded, knew what he was doing was illegal. And his ties to the United States simply are not strong enough. And I believe that the risk of flight is great. This is a presumption case, and I don't think that he has overcome that presumption.

The defendant is remanded to the custody of the Marshal as a flight risk.

MR. AGNIFILO: Your Honor, I don't believe it is a presumption case. And I don't think the Government thinks it is either.

THE COURT: I thought you said the maximum was 100 and what years?

MR. NGUYEN: Yes, Your Honor, it is a very high statutory maximum, but it is not --

THE COURT: Okay, that's fine. I still don't think that he's -- I framed it that way because the burden shifts, but I still don't believe that he -- that I have any assurance that he is going to stay here.

So I am going to order that he be detained pending a trial as a flight risk.

The defendant is remanded to the custody of the

Marshal.

MR. AGNIFILO: Thank you, Your Honor.

THE COURT: Thank you.

NOTE: The hearing concluded at 2:15 p.m.

---

C E R T I F I C A T E of T R A N S C R I P T I O N

I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court. Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

/s/ Norman B. Linnell

Norman B. Linnell

Court Reporter - USDC/EDVA